UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISON
CASE NO. 1:22-cv-23054 SCOLA/GOODMAN

PAULA MAGALY NUNEZ,

Plaintiff,

v.

KILOLO KIJAKAZI
ACTING COMM'R OF SOC. SEC.,

Defendant.

_____/

OMNIBUS REPORT AND RECOMMENDATIONS
ON SUMMARY JUDGMENT MOTIONS

This case challenges a denial of social security benefits. Plaintiff Paula Magaly Nunez ("Plaintiff") and Defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Commissioner" or "Defendant"), filed cross-motions for summary judgment. [ECF Nos. 20; 23]. The Commissioner's summary judgment motion also served as her opposition response to Plaintiff's motion. Plaintiff filed a reply. [ECF No. 24].

According to the Clerk's directive in these types of administrative appeals, all dispositive matters have been referred to the Undersigned for a Report and Recommendations. [ECF No. 2]. Additionally, Senior United States District Judge Robert N. Scola, Jr. issued a scheduling order referring this matter to the Undersigned "for a

ruling on all pre-trial, non-dispositive matters and for a report and recommendation on any dispositive matters, pursuant to 28 U.S.C. § 636 and Local Magistrate Judge Rule 1." [ECF No. 11].

As explained below, the Undersigned **respectfully recommends** that the District Court **deny** Plaintiff's summary judgment motion, **grant** the Commissioner's summary judgment motion, and enter a final judgment in favor of the Commissioner.

## I.   <u>Procedural Background</u>

On May 20, 2020, Plaintiff filed widow's insurance benefits applications alleging a disability onset date of August 2, 2009. (R. 283-286).[1] She alleged disability due to diabetes, a thyroid condition, bipolar disorder, panic attacks, and depression. (R. 327). The Commissioner denied Plaintiff's applications initially and on reconsideration. (R. 66-75; 90-107). Plaintiff then appealed the Commissioner's decision. The Appeals Council denied her appeal.

On April 20, 2022, Administrative Law Judge Norman Hemming ("the ALJ") held a telephonic hearing where he heard testimony from Plaintiff (who was represented by counsel with the assistance of a Spanish interpreter) and from a Vocational Expert ("VE"). (R. 34-65). On May 5, 2022, the ALJ issued his decision, concluding that Plaintiff was not

---

[1]      Citations to ("R. __") refer to pages of the administrative record transcript. [ECF No. 17].

disabled. (R. 12). Plaintiff appealed the ALJ's decision, and on September 7, 2023, the Appeals Council affirmed the ALJ's decision. (R. 1).

## II.   Factual Background

Plaintiff was 47 years old on her alleged onset date of August 2, 2009. (R. 25). She earned a general education diploma ("GED") and has no past relevant work experience. *Id*. Her husband died on April 12, 2020. (R. 16). At the ALJ hearing, she testified that her main problem is insulin-dependent diabetes and related symptoms. (R. 18).

After Plaintiff's Counsel stipulated to the VE's qualifications, the ALJ provided the VE with four hypotheticals. (R. 55-62). The ALJ imposed certain limitations, including: concentrating for two hours at a time followed by a five-minute break; frequent ability to understand, remember, make judgments on, and carry out complex instructions; occasionally interact with supervisors and co-workers; frequently interact with the general public; sit or stand for no more than ten to fifteen minutes at a time; and walk for no more than fifteen to twenty minutes of the time. (R. 56-57). After taking into account the ALJ's limitations, the VE provided three jobs: Cashier Self Service; Order Caller; and Shipping-and-Weighing Receiver. (R. 59-60). Plaintiff did not make any objections, but she did offer her own hypothetical to the VE. (R. 63).

Plaintiff filed her motion for summary judgment. [ECF No. 20]. In it, she does not contest the ALJ's residual functional capacity ("RFC") assessment. However, she does contest the ALJ's Step-Five findings, arguing that they are not supported by substantial

evidence. *Id*. Defendant, after requesting leave [ECF No. 21] to file her motion for summary judgment and respond to Plaintiff's motion, filed her Motion for Summary Judgment a day late. [ECF No. 23]. Defendant's motion argues that the ALJ's decision should be affirmed because it is supported by substantial evidence and that the issues Plaintiff isolates are harmless. *Id*.

### III.   <u>Applicable Legal Standards</u>

In evaluating a claim for disability benefits, an ALJ must follow the five steps outlined in 20 C.F.R. §§ 416.920(a) and 404.1520, which the Undersigned summarizes as follows:

1.   **Step one**. Is the claimant performing substantial gainful activity? If not, then an ALJ next determines:

2.   **Step two**. Does the claimant have one or more severe impairments? If the claimant does, then an ALJ next considers:

3.   **Step three**. Does the claimant have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled; if not, then an ALJ must determine claimant's residual functional capacity ("RFC"); and then determine:

4.   **Step four**. Based on the RFC, can claimant perform his or her past relevant work? If so, then the claimant is not disabled. If the claimant cannot perform his or her past relevant work, then an ALJ must finally determine:

5.   **Step five**. Based on the claimant's age, education, and work experience, and the RFC, can he or she perform other work? If so, then the claimant is not disabled. If not, then the claimant is disabled and entitled to benefits.

*See, e.g., Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). In reviewing the decision, the Court must consider the record as a whole and determine whether the ALJ applied the correct legal standard and whether substantial evidence in the record supports his findings of fact. *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips*, 357 F.3d at 1240 n.8 (internal citation omitted).

The Court is authorized to enter a judgment affirming, modifying, or reversing the decision of an ALJ, with or without remand. 42 U.S.C. § 405(g); *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1302 n.13 (11th Cir. 2000).

## IV.   The ALJ's Findings

In denying Plaintiff's claim for benefits, the ALJ followed the sequential five-step evaluation process for social security claims. (R. 15-27). At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since August 2, 2009, the alleged disability onset date. (R. 17).

At step two, the ALJ concluded that Plaintiff's bipolar I disorder is a severe impairment. (R. 18).

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments classifiable as a listed impairment in 20 C.F.R. Part 404,

Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526*). (R. 19).

At step four, after a review of the entire record, the ALJ concluded that Plaintiff had the RFC to perform a full range of work with some limitations. (R. 21). The limitations include: frequent ability to understand, remember, make judgements on, and carry out complex instructions. *Id*. Additionally, the ALJ found that Plaintiff can frequently interact with the general public at work, occasionally interact with supervisors and co-workers, and can maintain concentration for at least two hours at a time with five minutes off task. *Id*. In making this finding, the ALJ found that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms; however, [ ] [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (R. 22).

Finally, at step five, the ALJ found that the Plaintiff had no past relevant work under 20 C.F.R. § 404.1565. (R. 25). The ALJ considered Plaintiff's age, education, work experience, and RFC, in concluding that Plaintiff **could** perform jobs including Cashier Self Service, Order Caller, or Shipping-and-Receiving Weigher. (R. 26).

Accordingly, the ALJ held that Plaintiff had not been under a disability from August 2, 2009 through the date of the ALJ's decision (May 5, 2022). *Id*.

V.   **Analysis**

Plaintiff argues that the ALJ's step-five finding is not supported by substantial

evidence because of the inconsistencies stemming from the VE's testimony. [ECF No. 20, p. 13]. Plaintiff additionally argues that Defendant's motion should be struck because it was untimely (by one day), resulting in her motion being deemed as unopposed. [ECF No. 24, p. 1].

First, concerning Defendant's summary judgment motion, the Court agrees with Plaintiff that the motion is untimely. Originally, pursuant to Judge Scola's Scheduling Order, Defendant's combined response brief and cross-summary judgment motion was due February 16, 2023. [ECF No. 11]. On January 12, 2023, Plaintiff filed a Motion for Extension of Time to file her Motion for Summary Judgment. [ECF No. 18]. The Undersigned granted Plaintiff's Motion that same day and consequently changed Defendant's deadline from February 16, 2023 to March 3, 2023. [ECF No. 19].

On March 2, 2023, the day before her deadline, Defendant filed her Motion for Extension of Time to file her combined response brief and cross-summary judgment motion. [ECF No. 21]. In it, Defendant requested a thirty-day extension "up to and including April 3, 2023" to prepare and submit her materials to the Court because the "Undersigned Special United States Attorney has a heavy workload, including drafting two district court briefs that are on (sic) due on or before March 3, 2023. As a result, the undersigned is unable to complete the Commissioner's Motion for summary judgment or other pleading for timely filing with this Court." *Id*. The Undersigned granted Defendant's request the following day, changing the deadline from March 3, 2023 to April

3, 2023. [ECF No. 22].

However, Defendant filed her materials with the Court on April 4, 2023 -- one day past the deadline. Defendant's untimely motion, **signed** on April 4, 2023, was not accompanied by a motion for leave to file out of time. Similarly, it includes no explanation for the delay, nor does it even *acknowledge* its untimeliness. Plaintiff cites multiple cases and argues that the Court should decline to consider Defendant's motion because "not only is it late but it does not even bother to present a reason for its failure." [ECF No. 24, p. 3].

"Deadlines are not meant to be aspirational" and attorneys "must take responsibility for the obligations to which [they] committed and get the work done by the deadline." *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 864 (11th Cir. 2004) (affirming the district court's refusal to consider plaintiff's untimely responses to defendants' summary judgment motions). If the Court were to refuse to consider Defendant's untimely motion under these circumstances, then it most likely would not be considered an abuse of discretion. *See Mosley v. MeriStar Mgmt. Co., LLC*, 137 F. App'x 248, 250 (11th Cir. 2005) (holding that a "district court's refusal to consider an untimely opposition to summary judgment motion is not an abuse of discretion"). Because the Commissioner did not provide any explanation for the tardy filing (after obtaining two enlargements), Defendant's motion is void of "any showing of excusable neglect or some other reason for the late filing." *McDuffie v. Broward Cnty., Fla.*, 654 F. App'x 408, 412 (11th Cir. 2016).

Plaintiff's cited authority arguably supports the contention that it is not an abuse of discretion to disregard or strike a motion when it is untimely (even as little as three days late) and with no good cause explaining the failure. However, none of the cases provided reflect a scenario involving either a social security action or a mere one-day delay. Additionally, Plaintiff does not state that Defendant's untimeliness prejudiced her in any way, nor does she request for Defendant's motion to be stricken in her Request for Relief.

Ironically, Plaintiff's request to strike Defendant's summary judgment motion is itself also procedurally improper -- but for a different reason. Plaintiff's request violates Federal Rule of Civil Procedure 7(b). Specifically, Fed. R. Civ. P. 7(b) states that a request for a court order must be made by *motion*. Plaintiff's request for this Court to strike or disregard Defendant's filings is not appropriate because it was made in a *response* to a motion. The Federal Rules obligated Plaintiff to file a separate motion seeking this relief -- as the Federal Rules *obligated* Defendant to adhere to Court-imposed deadlines.

Here, Defendant's Motion for Extension of Time previously communicated to the Court that her "heavy workload" was impeding her ability to adhere to the set deadlines. [ECF No. 21]. Defendant requested an extension "up to **and including** April 3, 2023." *Id.* (emphasis added). Even though the Court provided ample notice that the deadline was set to April 3, 2023, *not* April 4, Defendant still filed her motion late.

To be sure, I do have the discretion to reject Defendant's untimely filings (i.e., a

combination summary judgment motion and response to Plaintiff's summary judgment motion), I will not do so here because the delay was only for one day and that delay did not prejudice Plaintiff. *See Syed v. Sci.-Atlanta, Inc*., No. 1:03-CV-2318-RLV-CCH, 2005 WL 8154289, at *9 (N.D. Ga. Jan. 31, 2005), report and recommendation adopted, No. 1:03-CV-2318-RLV, 2005 WL 8154288 (N.D. Ga. Mar. 30, 2005) (district court exercised its discretion to consider the plaintiff's response to defendant's motion for summary judgment even though it was filed one day late). Therefore, even though the Court *could* strike Defendant's submission, I recommend that Plaintiff's request be **denied** and that the Court not strike Defendant's Motion on the basis of untimeliness.

Plaintiff's Motion takes issue with the VE's testimony related to the ALJ's hypotheticals. The ALJ's hypotheticals included a limitation to only "frequent" interaction with the general public and only "occasional" interaction with supervisors and co-workers. (R. 26). In response, the VE testified that the hypothetical person could perform jobs such as Cashier Self Service, Order Caller, or Shipping-and-Receiving Weigher. *Id*.

Plaintiff argues that the job of Cashier Self Service ("Cashier") is a Reasoning Level 3 job that "effectively requires 'constant' interaction with the general public." [ECF No. 20, p. 11]. Reasoning Level 3 jobs would have Plaintiff "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." (Dictionary of Occupational Titles ("DOT") #211.462-010).

10

Plaintiff contends that the ALJ's RFC finding is internally inconsistent because she is unable to perform that type of job due to her capacity "to only engage in understand, remember, make judgments on, and carry out complex instructions for 5.33 hours out of an eight-hour workday." [ECF No. 20, p. 11]. Plaintiff argues that she cannot reliably perform a Reasoning Level 3 job like Cashier or Shipping-and-Receiving Weigher because she is unable to work more than 5.33 or two-thirds of an eight-hour workday. *Id.*[2] She repeats that argument, using the **same** logic, with regards to being an Order Caller, a Reasoning Level 2 job. [ECF No. 20, p. 12].

> The DOT assigns jobs a reasoning level, with one the lowest and six the highest. DOT, App'x C, 1991 WL 688702 (4th ed. rev'd 1991). Level one requires an employee to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.* Level two requires an employee to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." *Id.* Level three requires an employee to "[a]pply commonsense understanding to carry out

---

[2]     Defendant notes that Plaintiff did not challenge the ALJ's RFC finding and that the RFC finding appears consistent with the Reasoning Level 3 language. [ECF No. 23, p. 9]. Plaintiff argues that Defendant's position regarding the RFC's consistency with the Reasoning Level 3 language should be waived because there is no analysis or explanation attached to it. [ECF No. 24, p. 5].

If a party makes a claim but does not elaborate or provide citation to authority about that claim, then the Eleventh Circuit deems that claim to be waived. *Outlaw v. Barnhart*, 197 F. App'x 825, 828 (11th Cir. 2006). Here, while Defendant's position regarding the RFC's consistency with the reasoning level is bare bones, it does involve a direct comparison of both standards with their relevant citations. Therefore, it is more than just merely stating a claim and will not be deemed waived.

instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.*

*Howard v. Comm'r of Soc. Sec.*, No. 8:18-CV-2004-T-PDB, 2019 WL 4738137, at *1 (M.D. Fla. Sept. 27, 2019).

In describing what level two requires, Plaintiff purposefully highlighted the fact that it includes "commonsense understanding to carry out ***detailed*** but uninvolved written or oral instructions." [ECF No. 20, p. 12 (emphasis in original)]. She states that the "Eleventh Circuit has held that there is an apparent conflict between a limitation to 'simple, routine, tasks' and Reasoning Level 3 jobs." [ECF No. 20, p. 11 (citing *Johnson v. Comm'r of Soc. Sec.*, 782 F. App'x 875, 878 (11th Cir. 2019))].

Plaintiff did not cite to *any* record (or supporting) evidence indicating ***where*** this limitation to "simple, routine tasks" exists (and the Undersigned was unable to locate such language).[3] The ALJ found that Plaintiff has the RFC to "perform a full range of work at all exertional levels . . . ." (R. 21). Without any evidence showing otherwise, the ALJ never limited Plaintiff to "simple, routine, tasks," and, in fact, found that she can frequently "carry out *complex* instructions." (R. 56) (emphasis added).

However, even if the "simple" limitation existed, then it would be inconsequential because the Eleventh Circuit has held that there is no apparent conflict between "simple"

---

[3]      Defendant did not address this issue regarding "simple, routine tasks."

limitations and level 2 or 3 jobs. *See Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 872 (11th Cir. 2016) ("As for jobs labeled with reasoning levels of two or three, they may also be jobs with simple tasks.").

Finally, Plaintiff's citation to *Johnson* is misleading because while the Eleventh Circuit held that there was an apparent conflict between the "simple" limitation and the Reasoning Level 3 job, it was <u>because</u> of the plaintiff's mental capacities, not because of the **type** of limitation:

> At Johnson's hearing, the ALJ described a hypothetical employee (yes, still based on Johnson) to the VE that is "limited to simple, routine tasks, not at a production rate pace and no contact with the public." (emphasis added). The ALJ's limitation on the hypothetical employee's reasoning ability was based on **evidence throughout the record** indicating that Johnson's **mental capacities were substantially impaired**. We believe that there is at least "apparently" a conflict between an employee limited to "simple, routine tasks" and one able to "deal with problems involving several concrete variables."

*Johnson*, 782 F. App'x 875 at 878.

Unlike the scenario in *Johnson*, the ALJ did not limit Plaintiff to performing "simple, routine tasks" or find that her mental capacities were substantially impaired. In fact, the ALJ found that she has only "mild" limitations in "understanding, remembering, or applying information." (R. 19). The ALJ's paragraph "B" finding states that Plaintiff "is able to perform simple maintenance when motivated, prepare meals, pay bills, go to doctor's appointments, take medications, shop, drive, and read." (R. 20). "In addition, the record shows that the [Plaintiff] was able to provide information about her health, describe her prior work history, follow instructions from healthcare providers, comply

with treatment outside of a doctor's office or hospital, and respond to questions from medical providers." *Id*.

Plaintiff states that the ALJ limited her to working two-thirds of a full eight-hour workday. [ECF No. 20, p. 11]. However, the Undersigned is unable to locate *where* in the transcript he makes that exact finding.

The ALJ's hypothetical described Plaintiff as having "the frequent ability to understand, remember, make judgments on, and carry out complex instructions. This hypothetical [plaintiff] can only occasionally have interactions with supervisors and co-workers but can frequently have interactions with the general public." (R. 56). According to the DOT, "frequent" means that the activity or condition exists from 1/3 to 2/3 of the time; "occasionally" means that the activity or condition exists up to 1/3 of the time; and "constantly" means that the activity or condition exists 2/3 or more of the time. (DOT #211.462-010).

The ALJ's hypothetical additionally set time limitations where the hypothetical plaintiff would work in "two-hour segments at a time, with five minutes off task, and then going back to a two-hour concentration." (R. 61). The ALJ also set aside an hour for lunch and two fifteen-minute breaks. (R. 58). Even subtracting the lunch hour and break time (45 minutes) from the total eight hours, the Undersigned's total is six hours and fifteen minutes. Two thirds of eight hours is five hours and thirty-three minutes (as

Plaintiff suggests). But, if one takes both the lunch and additional breaks into account, then two thirds is about four hours and ten minutes.

Plaintiff argues that this "two-thirds" time limit equates to her inability to perform either a Reasoning Level 2 or 3 job but fails to include any supporting authority or explain her rationale -- especially considering the ALJ's findings related to her mental capabilities. (R. 19-25). She repeatedly concludes that the time limit impedes her from working a full workday, and if she cannot work the full eight-hour workday then how can she reasonably perform a Reasoning Level 2 or 3 job. [ECF No. 20, pp. 11-13].

The VE provided the three jobs (Cashier, Order Caller, or Shipping-and-Receiving Weigher) with the understanding that Plaintiff would be able to **meet** the time limitations imposed by the ALJ and *still* perform, due to the flexible nature of the jobs. (R. 59). In fact, the ALJ's time limitations coupled with Hypothetical #2 forced the VE to abandon the initial three medium-level jobs listed for Hypothetical #1. *Id*. When the ALJ asked in Hypothetical #3 whether including the *additional* limitation of having Plaintiff "function solely at the light exertional [level] and [ ] concentrate in two-hour segments of time solely [,]" would change anything, the VE maintained his answers from Hypothetical #2. *Id*. The VE explicitly provided *flexible* positions meeting the ALJ's hypotheticals. Without any supporting reasoning or authority, Plaintiff's argument that the time limit conflicts with her ability to perform a Reasoning Level 2 or 3 job is merely much ado about nothing.

Plaintiff continues this view in arguing that the "Cashier" finding is inconsistent

15

because being a cashier "**effectively** requires *'constant'* interaction with the general public" -- but the ALJ's RFC finding imposed a limitation of "*frequent*" interaction with the general public. [ECF No. 20, p. 11 (emphasis added)]. Plaintiff relies on "logic" to declare "that there is always another person on the other side of [a cashier] transaction." *Id*.

The Undersigned takes issue with this argument because it ignores the **specific** language *directly attributed* to speaking with people. DOT definitions include certain sections with corresponding levels or details. For example, the Cashier definition includes the reasoning section with a corresponding level of 3. (DOT #211.462-010). The definition also includes a section labeled: People. That section states, "People: 6 - Speaking-Signaling; S-Significant." *Id*. Plaintiff's arguments ignore this language, aside from acknowledging, in her Response, that it exists. [ECF No. 24, p. 4].

Plaintiff uses her interpretation to impose her **own** standards on the definition when she states that being a cashier "*effectively* requires 'constant' interaction with the general public. " [ECF No. 20, p. 11 (emphasis added)]. Plaintiff's argument is mostly premised on her own self-motivated logic, not what is in the definition or applicable caselaw. At no point does she explain how the "significant" standard impacts her argument. In fact, *Defendant* is the first to speak about the "significant" standard.

Defendant contends that "[w]hile the DOT description of [cashier] indicates that it involves "*significant*" involvement with people, it does **not** specify that interaction would be *'constant.'*" [ECF No. 23, p. 6 (emphasis added)].

Without citation to any supporting authority, Plaintiff's argument as to her inability to perform as a Cashier or the purported "inconsistency" with the ALJ's findings is mere speculation. Plaintiff's assumption that the position "effectively requires 'constant' interaction with the general public" is nothing more than attorney rhetoric because: (1) the DOT description does **not** mention "constant" interactions with people; (2) Plaintiff does not mention the "significant" language from the DOT description, so there is no attempt to compare, define, or distinguish between "constant" and "significant"; and (3) Plaintiff fails to cite to any authority supporting her argument.

Additionally, Plaintiff fails to substantiate her theory that "frequent" and "constant" (but the comparison should actually be to "significant") are incompatible standards that merit reversal based on the ALJ's findings. Plaintiff's argument **assumes** that because there is always another person involved in a cashier transaction that the interaction is constant. However, Plaintiff's assumption implies that she would work in a store that is consistently dealing with customers or the general public; but, depending on where she works, she may experience prolonged periods of tranquility and inactivity due to lack of foot traffic and a reduced flow of purchasers.

Plaintiff continuously mislabels the DOT's description for a Cashier's interaction with people as "constant" in her response to Defendant's Motion for Summary Judgment. [ECF No. 24, p. 4]. She states that Defendant's argument requests the Court to "disregard logic and a plain reading of the job description[.]" *Id*. The Undersigned disagrees and

notes that Plaintiff's argument, while supposedly relying on logic and a plain reading, limits itself to **one** potential possibility -- that her place of employment is busy enough to have her *constantly* interacting with people for the full workday. As previously mentioned, Plaintiff could work in a store with little to no foot traffic, or a store with fluctuating volumes of foot traffic and changing percentages of shoppers who make purchases throughout the day. Plaintiff's argument focuses on her self-created reality that would mandate reversal yet ignores or fails to address the other potential types of reality and how these other scenarios could still mandate a reversal.

Plaintiff's response also subsequently faults Defendant for failing to offer a "plausible explanation for what a cashier might be doing for the remaining minimum of one-third [4] of an eight-hour workday that does not involve direct interaction with the public." [ECF No. 24, p. 4]. Not only does Plaintiff's response imply that there must always be an explanation to account to whatever remaining time exists [5], but Plaintiff's demand of Defendant to offer a plausible explanation ignores *all of the time* the ALJ granted her in terms of daily breaks and the remainder of the DOT description.

The DOT description includes a variety of possible tasks that do **not** involve direct

---

[4]   One third of eight hours is two hours and forty minutes. However, after taking breaks into account, each third of the actual working day hours is approximately two hours and five minutes.

[5]   Plaintiff failed to include any supporting authority or reasoning explaining her contention that there is a duty to account for all time in the workday, and that Defendant must provide an explanation as to all such time.

interaction with the public (i.e., preparing reports of transactions, record totals shown on cash register tape and verify against cash on hand, etc.).[6]

Therefore, based on the above reasoning, Plaintiff failed to demonstrate that her RFC-related restrictions conflict with being a Cashier or performing a general Reasoning Level 2 or 3 job.

After listening to the ALJ's hypotheticals, the VE testified that Plaintiff could perform two other jobs in addition to that of a Cashier. However, as Plaintiff correctly states, the VE provided *incorrect* citations for the following two jobs: Order Caller and Shipping-and-Receiving Weigher.

---

[6]     The description for Cashier II is as follows:

Receives cash from customers or employees in payment for goods or services and records amounts received: Recomputes or computes bill, itemized lists, and tickets showing amount due, using adding machine or cash register. Makes change, cashes checks, and issues receipts or tickets to customers. Records amounts received and prepares reports of transactions. Reads and records totals shown on cash register tape and verifies against cash on hand. May be required to know value and features of items for which money is received. May give cash refunds or issue credit memorandums to customers for returned merchandise. May operate ticket-dispensing machine. May operate cash register with peripheral electronic data processing equipment by passing individual price coded items across electronic scanner to record price, compile printed list, and display cost of customer purchase, tax, and rebates on monitor screen. May sell candy, cigarettes, gum, and gift certificates, and issue trading stamps.

(DOT #211.462-010).

An "apparent conflict" is "more than just a conflict that is made apparent by the express testimony of the VE." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1365 (11th Cir. 2018). "It is a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony." *Id*. "At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id*. In other words, "apparent" means "seeming real or true, but not necessarily so." *Id*. at 1366 (quoting *Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015)).

Given the VE's incorrect citations for the two positions other than Cashier, there are issues which need to be evaluated here. Not only did the VE provide incorrect citations to the ALJ twice, but the number of positions the VE provided for two of the jobs are inconsistent with those listed on the ALJ's report. Neither of those issues were mentioned or discussed during the hearing nor in the ALJ's report.[7]

The ALJ has an affirmative duty to "identify and resolve apparent conflicts between DOT data and VE testimony, and this duty is not fulfilled simply by taking the VE at his word that his testimony comports with the DOT when the record reveals an apparent conflict between the VE's testimony and the DOT." *Id*. at 1362. The question here is whether any of those issues constitute harmless error or merit reversal because the ALJ

---

[7]    Neither party mentioned or discussed the discrepancies between the job numbers testified to and what was included in the report.

failed to resolve them. If an ALJ fails to resolve an apparent conflict, then his decision cannot be supported by substantial evidence unless the error can be deemed harmless. *Id.* at 1356; *Massachi v. Astrue*, 486 F.3d 1149, 1154 n.19 (9th Cir. 2007) (concluding that an ALJ's failure to resolve an apparent conflict may be deemed harmless "if the vocational expert had provided sufficient support for her conclusion so as to justify any potential conflicts").

Plaintiff argues that the ALJ based his "finding of fact on the VE's testimony about a total number of **919,200** jobs without considering apparent conflicts that affected **all** of those jobs. [ECF No. 20, p. 14 (emphasis in original)]. She specifically raises concern over the fact that no one is able to confirm whether the number of Order Caller positions available reflect those of being an Order Caller or a Credit Card Clerk because the VE miscited Order Caller. [ECF No. 20, p. 12]. Plaintiff quotes *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1316 (11th Cir. 2021) for the principle that "[w]here additional (or more specific) agency fact-finding is needed, remand is the appropriate disposition." [ECF No. 20, p. 14].

Out of the 919,200, the VE attributed[8] 840,000 to Cashier, 12,900 to Order Caller, and 66,300 to Shipping-and-Receiving Weigher. (R. 26; 59; 60). Adding both the Cashier

---

[8]    The Court notes that the VE's testimony regarding the number of positions is inconsistent with those listed in the ALJ's report for Cashier and Shipping-and-Receiving Weigher. For example, the VE testified to 840,300 positions, instead of the 840,000 listed, and 63,300 positions, instead of the 66,300 listed. (R. 59-60). The Undersigned will proceed by using the numbers from the ALJ's report.

and Shipping-and-Receiving Weigher positions totals 906,300; an amount that courts have deemed to reflect a significant number. *See Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1010 (11th Cir. 2020) (finding that 78,000 positions in the national economy is a significant number); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (finding that 80,000 jobs is a significant number); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 935 (11th Cir. 2015) (44,400 jobs nationwide were sufficient to meet the ALJ's step five burden); *Cortaza v. Kijakazi*, No. 20-CV-23705, 2023 WL 2165149, at *7 (S.D. Fla. Feb. 3, 2023), *report and recommendation adopted sub nom. Cortaza v. Comm'r of Soc. Sec.*, No. 20-CV-23705, 2023 WL 2160776 (S.D. Fla. Feb. 22, 2023) (377,000 is a sufficient number to meet the ALJ's step five burden).

Defendant argues that such an error is harmless and cites to a case involving Plaintiff's Counsel here, *Kramer v. Saul*, No. 20-CV-60744, 2021 WL 2191045, (S.D. Fla. May 14, 2021), *report and recommendation adopted sub nom. Kramer v. Comm'r of Soc. Sec.*, No. 20-CIV-60744-RAR, 2021 WL 2190909 (S.D. Fla. May 29, 2021). [ECF No. 23, p. 8]. Defendant contends that even though *Viverette* was published after *Kramer*, its outcome on the present issue would be the same -- that the error is harmless. *Id*. Plaintiff simply argues that Defendant's reliance on *Kramer* is unfounded. [ECF No. 24, p. 5].

In *Kramer*, the VE included the wrong DOT number for one of the mentioned positions and stated that there were 19,000 available positions for it. No. 20-CV-60744, 2021 WL 2191045, at *6. The *Kramer* Court held that the **error was harmless** because:

The VE listed three jobs with a total of approximately 188,000 positions in the national economy. *See* Tr. 75, 269. Even excluding the 19,000 positions listed for industrial cleaner (which only make up a small portion of the total number), the number of positions is only reduced to 169,000. Thus, provided that Plaintiff is capable of performing the other two jobs listed (dining room attendant and order picker), the ALJ's determination that Plaintiff "is capable of making a successful adjustment to other work that *exists in significant numbers in the national economy*," Tr. 75 (emphasis added), is supported by substantial evidence (even without the 19,000 positions listed for industrial cleaner). *See Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009-10 (11th Cir. 2020) (finding ALJ's step five determination to be supported by substantial evidence where there were 78,000 positions in the national economy between two jobs even after excluding consideration of the positions available for a third job).

*Id.* (footnote omitted).

However, in *Viverette*, the VE testified that there were a certain amount of jobs available for a position nationally, "but on cross-examination stated that this number included the total of sedentary unskilled jobs within the relevant [Standard Occupation Classification system ("SOC")] code. Significantly, [the VE] also said that she did not know whether the other DOT occupations within the SOC code required level 1 or level 2 reasoning or something higher." 13 F.4th at 1319. The *Viverette* Court reversed the district court's judgment because (1) there was an apparent conflict between the reasoning level and "simple, routine, and repetitive tasks," and (2) the VE failed to "estimate what portion of jobs within the relevant SOC code Mr. Viverette can perform, the 14,000 number for the check weigher position may be overstated." *Id.*

Plaintiff highlights the following *Viverette* language in a footnote,

The Tenth Circuit faced a very similar situation in *Kimes v. Comm'r of Soc. Sec.*, 817 F. App'x 654 (10th Cir. 2020), and remanded for the ALJ to make specific findings about the number of jobs available nationally for a specific occupation: "In determining whether the 'significant numbers' requirement was satisfied, the ALJ considered both jobs together, for a total of 96,000 jobs. He did not consider whether [the occupation of] industrial cleaner, alone, with only 16,000 jobs, satisfies the requirement. It is not for this court to decide, in the first instance, whether a relatively low number qualifies as a 'significant number' of jobs." *Id.* at 659. We find *Kimes* to be persuasive and follow its approach.

[ECF No. 20, pp. 14-15 (quoting *Viverette*, 13 F.4th at 1319 n.3)].

In *Kimes*, the VE testified that the plaintiff "would be able to perform the jobs of automobile detailer, with 80,000 jobs in the national economy, and industrial cleaner, with 16,000 jobs in the national economy." 817 F. App'x at 658. The Tenth Circuit found that the automobile detailer job was not supported by substantial evidence and conflicted with the DOT. *Id.*

Without automobile detailer, the Step 5 assessment rests on the determination that Mr. Kimes could be an industrial cleaner. Part of the Step 5 determination, however, is a finding that the alternate jobs exist in "significant numbers in the national economy," 20 C.F.R. § 404.1560(c)(1), and the record shows there are only 16,000 industrial cleaner jobs in the national economy. In determining whether the "significant numbers" requirement was satisfied, the ALJ considered both jobs together, for a total of 96,000 jobs. He did not consider whether industrial cleaner alone, with only 16,000 jobs, satisfies the requirement. It is not appropriate for this court to decide, in the first instance, whether a relatively low number qualifies as a "significant number" of jobs. *See Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004); *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). Accordingly, we cannot uphold the denial of benefits based on the Step 5 determination.

*Id.* at 659.

24

The instant case is more similar to *Kramer* than to *Viverette* or *Kimes* because no additional fact-finding is needed to determine whether 919,200 is a significant number due to the previously-mentioned caselaw. For example, in *Kramer*, the district court held that the ALJ's error was harmless because the other two jobs listed collectively had 169,000 positions. 2021 WL 2191045, at *6. And as Defendant states, even if the jobs associated with being an Order Caller are subtracted from the 919,200, then the error is harmless because there still remains a significant number of jobs -- at 906,300. [ECF No. 23, p. 8]. *See, Cortaza*, 2023 WL 2165149, at *7 ("Even if an ALJ errs in determining that a claimant can perform certain jobs, the District Court may still affirm the decision of the ALJ provided there are a sufficient number of jobs available for the remaining jobs which the claimant can perform."); *Thomas v. Comm'r of Soc. Sec.*, 497 F. App'x 916, 920 (11th Cir. 2012) (finding harmless error where, after the jobs inconsistent with the claimant's RFC were removed, there were still sufficient jobs existing in the economy for the remaining jobs to support a finding that the claimant was not disabled).

As previously mentioned, the VE provided two incorrect citations during the hearing. The VE cited the job of an Order Caller as 209.587-014. (R. 60). But, 209.587-014 is the citation for a Credit-Card Clerk (retail trade), *not* an Order Caller. [ECF No. 20, p. 12]. The proper citation for Order Caller is 209.**667**-014 (a two-digit difference). The VE then committed the same error when citing to 222.587-074 for Shipping-and-Receiving Weigher because the proper citation is 222.**3**87-074 (a one-digit difference). [ECF No. 20,

p. 13]. Unlike the improper citation for Order Caller (leading to Credit Card Clerk), the

improper citation for Shipping-and-Receiving Weigher does not lead to an actual job title

(it is undisputed that there is a DOT job title for Shipping-and-Receiving Weigher). [ECF

No. 20, p. 12]. However, aside from the incorrect citations, the descriptions and associated

job titles provided sufficiently match those within the DOT. The DOT description for

Order Caller states:

> Reads items listed on order sheets to LABORER, STORES (any industry)
> who gathers and assembles items or to BILLING TYPIST (clerical) who
> prepares bills for items. Indicates on order sheets items located and items
> that are not available. May read items to CHECKER (clerical) I who
> examines articles prior to shipping. May be designated by kind of data
> called out to other worker as Weight Caller (clerical); Yardage Caller
> (textile)

(DOT #209.667-014). Comparatively, the VE described the position of Order Caller as

people who "work in manufacturing plants. All they're doing is calling out instructions

throughout the plant." (R. 60).

The DOT describes Shipping-and-Receiving Weigher as someone who,

> Weigh and records weight of filled containers, cargo of loaded vehicles, or
> rolls of materials, such as cotton, sugarcane, paper, cloth, plastic, and
> tobacco, to keep receiving and shipping records: Reads scale dial to
> ascertain weight and records weight on ticket, product, or material; or
> subtracts tare from gross weight to obtain net weight of product or material;
> or inserts ticket into automatic scale recorder that prints weight on ticket.
> May convey objects to scale, using handtruck, and lift objects onto scale.
> May record information on weight ticket, such as grade and yardage. May
> be designated according to item weighed as Cloth Weigher (knitting);
> Garment Weigher (knitting); Roll Weigher (paper & pulp; paper goods;
> plastics-synth.); Tobacco Weigher (clerical). May signal YARD ENGINEER
> (r.r. trans.) 910.363-018 to move cars on and off scale and be designated

Scaler (r.r. trans.). May weigh only incoming or outgoing materials or products and be designated Receiving Weigher (clerical); Shipping Weigher (clerical).

(DOT # 222.387-074). The VE described the position as, "[t]hey don't actually move the equipment. All they do is they sit at a console, Your Honor, and they weigh the objects that are going past them on a conveyor, and then they're pushing a button and writing down the total." (R. 60). Defendant contends that the VE's error is harmless because his descriptions matched those of the positions. [ECF No. 23, pp. 6-7]. The Undersigned agrees.

In comparing the three jobs (Order Caller, Cashier, and Shipping-and-Receiving Weigher), only two of the jobs are Reasoning Level 3 (Cashier and Shipping-and-Receiving Weigher), while Order Caller is a Reasoning Level 2 job. And, as previously stated, the Undersigned does not find an apparent conflict between those reasoning levels and the ALJ's limitations. All three of the jobs fall under the category of "light work" and involve a specific vocational preparation ("SVP") level of 2. Finally, with regards to interacting with people, the positions of Shipping-and-Receiving Weigher and Order Caller state that it is "not significant"[9] (unlike Cashier). (DOT ##209.667-014; 222.387-074).

---

[9]     Plaintiff reiterates her previous argument regarding the job of a Cashier and states that being an Order Caller "requires a near-constant level of interaction with co-workers," and that it conflicts with the ALJ's RFC limiting her to only "occasional" interactions with co-workers. [ECF No. 20, p. 13]. Plaintiff's argument fails to note the fact that the description requiring speaking and signaling with people is "**not significant**." *See* (DOT #209.667-014). Therefore, Plaintiff failed to demonstrate that her RFC-related restrictions conflict with being an Order Caller.

The Undersigned finds that even though the code numbers were incorrect, the error was **harmless** because both job descriptions match those found in the DOT and correspond with the VE's testimony which is consistent with the ALJ's RFC findings.

## VI.   <u>Conclusion</u>

Plaintiff's Motion requests this Court to reverse and remand Defendant's decision in denying her claim because Defendant's Step-Five finding is not supported by substantial evidence and because the apparent conflicts were never addressed. [ECF No. 20, p. 16]. Defendant's Motion requests that its decision be affirmed because the ALJ applied the proper legal standards and that substantial evidence supports the findings. [ECF No. 23, p. 1]. Plaintiff's Motion raised multiple "apparent conflicts": (1) inability for someone to perform a Reasoning Level 2 or 3 job due to time limitations; (2) wrong DOT citations; (3) inability to confirm Order Caller national job numbers; (4) inability to perform Cashier job due to interactions with people; (5) inability to perform Order Caller job due to interactions with people.

The issues related to the VE's testimony and the two incorrect citations generate **harmless error** because (1) the VE's testimony regarding the job title and descriptions were consistent with those in the DOT; (2) given that consistency, it is clear that the VE meant to cite Order Caller and not Credit Card Clerk; (3) the two jobs met the requirements posed by the ALJ's hypothetical; and (4) only one to two digits were off between the citation the VE provided and the **actual** citation.

Therefore, substantial evidence exists to support the Step-Five findings and the Undersigned recommends that Plaintiff's Motion [ECF No. 20] should consequently be **denied** and Defendant's Motion [ECF No. 23] **granted** as a result.

**VII.   <u>Objections</u>**

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with Senior United States District Judge Robert N. Scola, Jr. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY   RECOMMENDED** in Chambers, in Miami, Florida, on November 13, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>Copies furnished to</u>:
The Honorable Robert N. Scola, Jr.
All Counsel of Record